❐ Original      ❐ Duplicate

CLERK'S OFFICE
A TRUE COPY
Dec 16, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.   25    MJ    226 |
| information associated with Facebook User ID 1074904199, | ) |
| described further in Attachment A, that is stored at | ) |
| premises controlled by Meta Platforms, Inc. | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

    See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____12/30/2025_____ *(not to exceed 14 days)*

❐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. William E. Duffin_____.
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❐ for _____ days *(not to exceed 30)*    ❐ until, the facts justifying, the later specific date of _____.

Date and time issued:     _____12/16/2025 at 9:45 a.m._____       *William E. Duffin*
                                                       *Judge's signature*

City and state:    Milwaukee, Wisconsin             U.S. Magistrate Judge William E. Duffin
                                                           *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following Facebook accounts/pages:

- User ID 1074904199, profile URL facebook.com/precious.cruse, display name Precious Critton

All of which are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I**. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, stories (and archived stories), or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), specifically Preservation Request Number 20937891, Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts, stories, and other Facebook activities from January 1, 2025 to the present;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2025 to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from January 1, 2025 to the present including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of, and that the account created, hosted, or managed;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2025 to the present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any

payments associated with the service (including any credit card or bank account number);

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)    All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud) including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

(d) Posts, messages, stories, and other information relating to the offering of and/or

provision of "services" to defraud people or entities out of money or property.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**CLERK'S OFFICE**
**A TRUE COPY**
Dec 16, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 25 MJ 226 |
| information associated with Facebook User ID 1074904199, described further in Attachment A, that is stored at premises controlled by Meta Platforms, Inc. | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1343 | Wire fraud |

The application is based on these facts:

See Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Jill Dring

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: 12/16/2025

*Judge's signature*

City and state: Milwaukee, Wisconsin

U.S. Magistrate Judge William E. Duffin

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jill Dring, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Meta Platforms Inc. ("Meta"), a social technology company headquartered at 1 Meta Way, Menlo Park, CA 94025. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation, and have been since March of 2013. As a Special Agent, I investigate civil and criminal matters related to fraud, including health care fraud involving violations of the Health Care Fraud Statute, False Claims Act, Anti-Kick Back Statute and Stark Law. Prior to investigating health care fraud matters, I investigated criminal and national security related computer intrusion matters involving botnets, distributed denial of service attacks, the distribution of SPAM, malicious software, the theft of identification information, and other computer-based fraud. I have received training in computer technology and computer-based fraud and health care fraud.

3.     The facts in this affidavit are known to me through my personal knowledge, training, experience, and through information provided to me by other law enforcement officers in the

course of their official duties, whom I consider to be truthful and reliable.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (Wire Fraud) have been committed by Precious CRUSE. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## TARGET ACCOUNT

6. Identifiers for the Target Account are: User ID 1074904199, profile URL facebook.com/precious.cruse, display name Precious Critton.

## PROBABLE CAUSE

7. Beginning by at least February 2021, and continuing through December 2021, in the State and Eastern District of Wisconsin and elsewhere, Precious CRUSE knowingly and willfully executed and attempted to execute a scheme to defraud a health care benefit program, namely Wisconsin Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of such program, in connection with the delivery of and payment for health care benefits, items, and services.

8. As part of the scheme, CRUSE advertised on Facebook, using her Facebook account with User ID 1074904199 (the Target Account), and in the community, to solicit pregnant women and new mothers to enroll in her prenatal care coordination ("PNCC") agency.[1] She then

---

[1] The Target Account has had several different display names over time, including "Precious Cruse," "Presh Hutchison," and "Precious Critton." During the time of the events surrounding the health care fraud scheme

2

used the identifying information of the women she solicited to bill Medicaid for services she did not provide, on dates that sometimes predated by months the date she first met the woman.

9.  On September 12, 2025, following a federal criminal jury trial, CRUSE was convicted of seventeen federal charges, including Healthcare Fraud, False Statements Related to Healthcare Matters, Anti-Kickback Statute violations, Aggravated Identity Theft, and Money Laundering, all related to her scheme to defraud Medicaid through her PNCC agency. *See U.S. v. Precious Cruse,* Case No. 23-CR-149, ECF 55 (E.D. Wis.).

10.  In addition to utilizing the Target Account to further her prenatal care coordination scheme, I believe, based on evidence including the following, that CRUSE has utilized the Target Account, and is continuing to utilize the Target Account, to further other fraudulent conduct.

11.  For example, in or around September 30, 2020, CRUSE posted the following message on her Facebook account: "It's a lot of money in cable I promise you. I made wayyyyy more then 10 G's off cable since I been doing it." On or around December 7, 2020, CRUSE posted the following message, "I'm working on sooooo much other stuff, my old hustles ion got time for but I see you be doing yo thang too, definitely respect it you don't wana learn cable? That's better than selling drugs on my kids I ran G's up off that."

12.  On or around March 14, 2021, CRUSE posted the following message on her Facebook account: "I done had my hands in sooooo many different hustles tryna make sure my family eat & this one right here we taking off wit. Went from the cable plug to the shoe plug & now I'm a business owner." I believe, based on the date of the post, that the business CRUSE was referring to was her PNCC agency, Caring Through Love.

---

of which she was recently convicted (2021), her account bore the display name "Precious Critton," as it does currently. At her federal criminal trial, CRUSE stipulated that Facebook Account 1074904199 (the Target Account) belonged to, and was used by, her. *See U.S. v. Precious Cruse,* Case No. 23-CR-149, ECF 49 at 2 (E.D. Wis.).

13.    On or around January 28, 2022, CRUSE posted the following message: "The shoe hustle is $500. The deposit for the business is half which is $2500."

14.    CRUSE's use of her Facebook account to commit fraud has continued even after her conviction in her federal criminal case this year. For example, the following was relayed to me by a woman with initials T.W. In or around August 2025, T.W. saw a post made by CRUSE (who she knew only by the display name on CRUSE's Facebook account, Precious Critton) on Facebook advertising assistance to individuals and families affected by the floods that occurred in Milwaukee. CRUSE was offering assistance with paying for hotel expenses for displaced families.

15.    T.W. reached out to CRUSE, on CRUSE's Facebook account (the Target Account), and requested assistance paying for a storage unit that T.W. was using to store her personal items since her home had been damaged by the flood. CRUSE requested that T.W. give her $350, which was a portion of the amount owed by T.W. to the storage unit. After attempting to pay by Zelle and CashApp, T.W. was able to pay CRUSE through an Apple Pay account associated with the phone number XXX-XXX-2431.

16.    After a time, a representative from the storage unit company told T.W. that the payment was rejected. T.W. attempted to contact CRUSE but could not immediately get in touch with her. CRUSE eventually replied to T.W., explaining that her delay was due to her having been tied up in court. When T.W. eventually spoke with CRUSE about the rejected payment in October 2025, CRUSE asked for an additional $150 to "buy info." T.W. was confused by this request and decided that she no longer wanted to be involved and asked for a refund. CRUSE stated that she did not provide refunds.

17.    On or around December 10, 2025, T.W. provided investigators with a screenshot of a post made by CRUSE on the "stories" portion of her Facebook page. In the post, CRUSE

4

stated the following: "Doing Bill Pay Today, $300 any amount for the first 3 PPL, Rent, utilities, car note, insurance, phone bill, credit card payments, etc. Payments do not reverse or your money back guaranteed." The contact icon for CRUSE that is visible in the screenshot is the same contact icon displayed on the Target Account.

BACKGROUND CONCERNING FACEBOOK[2]

18.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

20.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account

---

[2] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

6

24. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user

7

accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

32. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

33. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

35.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

37.     Based on the foregoing, I request that the Court issue the proposed search warrant.

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook accounts/pages:

- User ID 1074904199, profile URL facebook.com/precious.cruse, display name Precious Critton

All of which are stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I**. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, stories (and archived stories), or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), specifically Preservation Request Number 20937891, Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts, stories, and other Facebook activities from January 1, 2025 to the present;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2025 to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from January 1, 2025 to the present including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of, and that the account created, hosted, or managed;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2025 to the present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any

payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. § 1343 (wire fraud) including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

(d) Posts, messages, stories, and other information relating to the offering of and/or

provision of "services" to defraud people or entities out of money or property.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.